# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RONALD E. BLAKE,** | ) |
| | ) |
| Petitioner, | ) |
| | ) CIVIL NO. 10-628-GPM |
| vs. | ) |
| | ) CRIMINAL NO. 02-30086-GPM |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Before the Court is Ronald Blake's petition for relief under 28 U.S.C. § 2255, alleging that his conviction and current sentence suffer from constitutional infirmities. Mr. Blake claims that his trial and appellate counsel provided him with ineffective assistance in violation of the Sixth Amendment, that his sentence violates his right to Due Process, and that he should be resentenced in light of recent amendments to the U.S. Sentencing Guidelines. For the foregoing reasons, all of Mr. Blake's requests for relief are **DENIED**.

## BACKGROUND

Mr. Blake was arrested on July 9, 2002 and charged with two counts of distributing more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(a)(1)(B). The charges stemmed from two transactions with Hope Kurtz, an acquaintance of Mr. Blake. Ms. Kurtz was herself arrested on July 3, 2002 and agreed to cooperate with law enforcement by making two controlled drug buys from Mr. Blake. As a result, Ms. Kurtz purchased 25 grams of crack cocaine from Mr. Blake on July 5, 2002. On July 9, 2002, she purchased another 27.8 grams of

crack cocaine from Mr. Blake. While Ms. Kurtz was under visual surveillance during the first purchase, only during the second was she wearing a voice recording device.

**Trial and First Sentencing**

After a four-day trial, the jury convicted Mr. Blake of one count and acquitted him of a second count for distributing crack cocaine to Ms. Kurtz. Attorney William Stiehl represented Mr. Blake prior to and during his trial. After trial but before sentencing, Mr. Blake wrote the Court a two-page letter complaining of Mr. Stiehl's trial performance (Doc. 72, 02-CR-30086-GPM). Construing the letter as a motion to appoint counsel, the Court granted the motion and, on July 30, 2003, appointed attorney John Delaney Jr. to represent Mr. Blake during his sentencing hearing (Doc. 73). Mr. Blake promptly filed a request for a new trial, arguing that Mr. Stiehl provided ineffective assistance of counsel before and during trial (Docs. 81-82). The Court denied the new trial motion at Mr. Blake's sentencing hearing (Doc. 85). At sentencing on October 7, 2003, Mr. Blake was classified a career criminal under U.S.S.G. § 4B1.1 on account of his prior criminal history. As a result, Mr. Blake was sentenced to a term of 360 months imprisonment, with eight years of supervised release, and was fined $2,000, with an added special assessment of $100 (Doc. 88).

**First Appeal and Second Sentencing**

Mr. Blake appealed his sentence and conviction, alleging selective prosecution and sentencing error under *United States v. Booker*.[1] While rejecting Mr. Blake's selective prosecution

---

[1] Attorney Gareth Morris represented Mr. Blake for his first appeal to the Seventh Circuit. *See* 415 F.3d 625 (7th Cir. 2005). After the Seventh Circuit's limited remand, Mr. Morris entered his initial appearance in this Court on July 28, 2005 (Doc. 105). Mr. Morris represented Mr. Blake for the remainder of his appeals and sentencing hearings. However, Mr. Blake, in filing this § 2255 petition, now comes before the Court *pro se*.

argument and affirming his conviction, the Court of Appeals issued a limited remand for resentencing in light of the Supreme Court's decision in *United States v. Booker*. *See United States v. Blake*, 415 F.3d 626, 630 (7th Cir. 2005).

Prior to resentencing, Attorney Gareth Morris, now representing Mr. Blake, submitted a 26-page memorandum on behalf of Mr. Blake arguing for a reduction in Mr. Blake's sentence (Doc. 121). A number of arguments were put forward: that Mr. Blake accepted responsibility for his actions despite taking his case to trial; that the government "entrapped" Mr. Blake by having Ms. Kurtz induce him to sell her crack cocaine; that his status a career offender overstated his criminal history, unjustly increasing his sentencing guideline range; and that the Court should consider the racial disparities present in the sentencing regime for crack and powder cocaine. *Id.* In a 5-page supplemental memorandum, Mr. Morris further argued that the Court should consider Mr. Blake's assistance in thwarting an attack on a prison employee (Doc. 122).

At the resentencing hearing on August 30, 2006, the Court noted that had Mr. Blake not been deemed a career offender, the guideline range for selling over 50 grams of crack cocaine would have been a 168 to 210 month sentence. The Court then sentenced Mr. Blake to a term of 210 month imprisonment, reasoning that Mr. Blake's admirable actions to save the life of a prison employee "balanced out" his very serious criminal history, which had earned him classification as a career offender (Doc. 141).

**Second Appeal and Third Sentencing**

Following his second sentencing, Mr. Blake appealed, arguing that he was not given his right to allocution. The Court of Appeals agreed, found that the error was not harmless, and remanded for resentencing. *United States v. Blake*, 227 Fed. Appx. 506, 2007 WL 1875958 (7th Cir. June 28,

2007). Prior to resentencing, Mr. Morris, again representing Mr. Blake, filed a 15-page memorandum, arguing that Mr. Blake's sentence should be reduced in light of the Sentencing Commission's recently amended guidelines for cocaine base sentences (Doc. 163).[2] On September 17, 2007, the Court held Mr. Blake's third sentencing hearing. After hearing arguments from both parties and Mr. Blake's allocution, the Court imposed the same sentence, 210 months, and adopted the same reasoning for the sentence as stated on the record in Mr. Blake's prior sentencing hearing (Doc. 164).

### **Third Appeal and Fourth Sentencing**

Mr. Blake again appealed, raising a number of claims relating to proposed Sentencing Guideline amendments that addressed the sentencing disparity between powder and crack cocaine offenses. The Seventh Circuit agreed with Mr. Blake and found that, in light of *Kimbrough v. United States*, 552 U.S. 85 (2007), this Court had discretion to consider the disparate sentencing ratio between powder and crack cocaine offenses. *United States v. Blake*, 289 Fed. Appx. 118, 2008 WL 2787437 (7th Cir. July 18, 2008). Because the Seventh Circuit was uncertain whether the Court had considered the crack to powder cocaine disparity when sentencing Mr. Blake, it remanded for resentencing. *Id.* The Court held Mr. Blake's resentencing on October 27, 2009. Prior to the hearing, Mr. Morris, on behalf of Mr. Blake, again filed two sentencing memoranda arguing for a reduction in Mr. Blake's sentence (Docs. 183, 184). Mr. Blake was sentenced to a term of 168 months, a 42 month reduction from his prior 210 month sentence and a 192 month reduction from his original 360 month sentence (Doc. 188).

---

[2] As of the date of Mr. Blake's third resentencing hearing, the Sentencing Guideline amendments had yet to be made retroactive.

**Fourth Appeal**

Yet again, Mr. Blake appealed. This time, the Seventh Circuit affirmed the sentence, concluding that "the district court's decision is procedurally sound and Mr. Blake's sentence is reasonable . . . ." *United States v. Robert E. Blake* [sic], No. 08-3814, at 2 (7th Cir. June 23, 2009). On July 29, 2009, the Court of Appeals denied Mr. Blake's request for rehearing and a year later, on August 17, 2010, Mr. Blake filed this § 2255 petition (Doc. 1, 10-CV-628-GPM).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, collateral relief is available to Mr. Blake for any legal error in his conviction or sentence that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997), *quoting Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992). However, collateral relief under § 2255 is not a substitute for a direct appeal. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). As a result, "constitutional errors not raised on direct appeal may not be raised in a § 2255 motion unless the defendant can demonstrate either: (1) both good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice." *Id.* Even so, a petitioner can raise a claim of ineffective assistance of counsel in a collateral proceeding if he did not raise the issue on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

To establish a claim of ineffective assistance of counsel, Mr. Blake must satisfy *Strickland's* two-prong test. He must show that "his attorney's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and that he was prejudiced

by the subpar representation." *United States v. Jones,* 635 F.3d 909, 915 (7th Cir. 2011) *citing Strickland v. Washington,* 466 U.S. 668, 687–96 (1984).

"Surmounting Strickland's high bar is never an easy task." *Morgan v. Hardy*, 662 F.3d 790, 802 (7th Cir. 2011) *quoting Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). To establish that his counsel was ineffective, Mr. Blake must show that his attorney's performance amounted to incompetence under prevailing professional norms and not merely that it "deviate[d] from best practice or [the] most common custom." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). "[J]udges must not examine a lawyer's error (of omission or commission) in isolation." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Rather, the Court must "evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Id.* (noting that the type of "egregious" error that violates *Strickland* must be "an omission of something obviously better (in light of what was known at the time) than the line of defense that counsel pursued").

To avoid playing the part of a "Monday morning quarterback," *United States v. Malone*, 484 F.3d 916, 920 (7th Cir. 2007), "'judicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat the 'distorting effects of hindsight.'" *Atkins v. Zenk*, 667 F.3d 939, 944-45 (7th Cir. 2012) *quoting Strickland*, 466 U.S. at 689. "So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel." *United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir. 2005); *see also United States v. Lathrop,* 634 F.3d 931, 937 (7th Cir. 2011), *quoting Strickland*, 466 U.S. at 690 (reviewing courts "begin with

the presumption that [counsel] 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'").

Even if counsel's performance is found to be constitutionally deficient, a petitioner must also show that he was prejudiced by such performance. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011). It is insufficient to allege that the errors "had some conceivable effect on the outcome of the proceedings." *Morgan*, 662 F.3d at 802 (quotation omitted). Rather, Mr. Blake must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id. quoting Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Id.* Mr. Blake must meet both *Strickland* prongs, and it is unnecessary for a court "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## ANALYSIS

### A. Ineffective Assistance of Counsel Claims

Mr. Blake raises three ineffective assistance claims against his trial and appellate attorneys. First, Mr. Blake claims that his trial counsel, William Stiehl, was ineffective for failing to file a motion to suppress statements made by Ms. Kurtz. Second, Mr. Blake claims his appellate attorney, Gareth Morris was ineffective for failing to argue that a sentence based on Sentencing Guidelines employing a 100:1 ratio between crack and powder cocaine offenses violated his right to Due Process. Finally, Mr. Blake claims that Mr. Morris was ineffective for failing to put the burden on the Government to prove the acquitted conduct that was considered in the calculation of Mr. Blake's guideline sentence.

**Ineffective Assistance of Counsel Claim Against William Stiehl For Failure to File Motion to Suppress**

Mr. Blake claims that Mr. Stiehl, his trial counsel, was ineffective for failing to file a motion to suppress statements made by Hope Kurtz and any "derivative evidence" obtained by investigators as a result of Ms. Kurtz's post-arrest confession and other statements. Mr. Blake claims that investigators improperly extracted a confession from Ms. Kurtz by applying "psychological pressure" and by offering her false promises of leniency. Her confession and subsequent cooperation with authorities led to the investigation of Mr. Blake and, ultimately, to his conviction. Because Ms. Kurtz's confession was involuntary, Mr. Blake argues, Mr. Stiehl "was ineffective for not filing a motion to suppress any statements made by Hope Kurtz, up to and including trial testimony, based on their coercive and involuntary nature" (Doc. 1-1, 10-CV-628).

In filing this section 2255 petition, Mr. Blake renews his claim of ineffectiveness against Mr. Stiehl. After his conviction, Mr. Blake obtained new counsel and filed a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, claiming that Mr. Stiel provided ineffective assistance of counsel (Docs. 81-82, 02-CR-30086). The Court denied the motion at Mr. Blake's first sentencing. But because Mr. Blake wisely chose not to pursue the ineffectiveness claim against Mr. Stiehl on direct appeal, he has not procedurally defaulted the claim and the Court may consider it here. *See Massaro v. United States*, 558 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.").

Moving to the merits of Mr. Blake's claim, he fails to establish that Mr. Stiehl's performance was objectively unreasonable. Mr. Blake does not accuse Mr. Stiehl of failing to properly cross-examine Ms. Kurtz nor does he accuse Mr. Stiehl of other trial inadequacies. Rather, the thrust of

Mr. Blake's argument appears to be that Mr. Stiehl should have moved to suppress all evidence gained as a result of Ms. Kurtz's participation with investigators: but for Ms. Kurtz's coerced confession, investigators would not have launched an investigation of Mr. Blake. According to Mr. Blake, all evidence collected after Ms. Kurtz's confession should have been suppressed and the case dismissed (Doc. 8, 10-628-GPM).

Mr. Stiehl's decision not to pursue such a motion does not amount to the type of professional incompetence required to surmount *Strickland*'s first prong. *See Koons*, 639 F.3d at 351. Rather, Mr. Stiehl's decision was a reasonable strategic choice to which the Court must give deference. *See United States v. Cieslowski,* 410 F.3d at 360. First, the legal foundation for the motion envisioned by Mr. Blake would likely have been thin. The Government, in its response to Mr. Blake's section 2255 petition, correctly notes that the "government is not forbidden to buy information with honest promises of consideration." *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir. 1990); *see also United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990) ("[P]olice are free to solicit confessions by offering to reduce the charges against the defendant."). Mr. Blake contends that Ms. Kurtz was not offered honest consideration for cooperating but rather a false promise because police could not guarantee that Ms. Kurtz would not be charged with a crime. But, as the Government argues, this is not necessarily true. The promise given by investigators was not false. Ms. Kurtz was told that in exchange for cooperation, she would not be prosecuted. She cooperated and, later, was not prosecuted. The promise made by police was a promise kept by prosecutors. Ultimately, the suppression motion would have dealt with a cooperating witness and not a criminal defendant who confessed because of an alleged false promise of leniency. Offers of leniency or immunity have long been considered permissible consideration to obtain the cooperation of witnesses. *See United*

*States v. Barrett*, 505 F.2d 1091 (7th Cir. 1974); *United States v. Condon*, 170 F.3d 687 (7th Cir. 1999). Mr. Stiehl's decision not to pursue the suppression motion was quite reasonable given the likely legal difficulties it would have faced.

Second, the error alleged by Mr. Blake cannot be viewed in isolation; rather, it must be reviewed in the broader context of Mr. Stiehl's representation of Mr. Blake. It is "generally [] appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the identified acts or omissions overcome the presumption that a counsel rendered reasonable professional assistance." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990), *quoting Kimmelman v. Morrison*, 470 U.S. 365, 386 (1986) (citation omitted). Mr. Stiehl provided Mr. Blake a vigorous defense. Mr. Stiehl had the opportunity to cross-examine Ms. Kurtz and to question her credibility. He was apparently quite successful. The jury acquitted Mr. Blake of the one count where the Government did not have audio recordings to back up Ms. Kurtz's testimony. "[S]ingle oversights" by counsel do not surmount *Strickland*'s high bar unless the error is "sufficiently egregious and prejudicial." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Given the tenuous legal foundation supporting Mr. Blake's proposed suppression motion, Mr. Stiehl's decision not to pursue Mr. Blake's preferred line of attack on Ms. Kurtz can hardly be seen as error. Even if it could, in light of his otherwise zealous advocacy at trial, Mr. Stiehl cannot be considered ineffective in violation of the Sixth Amendment for failing to file the motion to suppress envisioned by Mr. Blake. *Id.*

Because Mr. Blake has failed to show that Mr. Stiehl was ineffective under *Strickland*'s first prong, the Court is not required to undertake an analysis of whether Mr. Blake was prejudiced by

Mr. Stiehl's decision. *See Welch v. United States*, 604 F.3d 408, 425 (7th Cir. 2010). Accordingly, Mr. Blake's claim against Mr. Stiehl is **DENIED**.

### Ineffective Assistance of Counsel Claim Against Gareth Morris For Failing to Argue the Defendant's Right to be Sentenced Based on Accurate Information

Mr. Blake claims that Mr. Morris provided ineffective assistance of counsel for failing to argue that a crack cocaine sentence under the Sentencing Guidelines violates Due Process because the Guidelines were based on "inaccurate information and assumptions about the relatively [sic] harmfulness of crack cocaine . . . ." (Doc. 1-1, ¶ 5, 10-CV-628). Mr. Blake's complaint is without merit. First, contrary to Mr. Blake's allegations, Mr. Morris did raise the issue of sentencing disparities for crack and powder cocaine offenses before the Court. And while Mr. Morris framed his arguments regarding the sentencing disparities differently than Mr. Blake preferred, Mr. Morris's decision not to pursue Mr. Blake's favored Due Process theory was a reasonable strategic choice that was not "objectively deficient." *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). Second, Mr. Blake fails to establish that he was prejudiced by Mr. Morris's decision not to raise a Due Process argument. Mr. Morris was a zealous appellate advocate for Mr. Blake, securing his client numerous resentencing hearings and reducing his client's term of incarceration by a total of 192 months. Mr. Blake's first claim of ineffective assistance against Mr. Morris is therefore denied.

1. **Deficient Performance**

Mr. Morris's decision not to challenge Mr. Blake's sentence using his novel Due Process theory was not objectively unreasonable. The Sixth Amendment grants criminal defendants the right to effective appellate counsel but not to have counsel make every argument that they would like. *See United States v. Boyd,* 86 F.3d 719, 723 (7th Cir. 1996) *quoting Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting that while a defendant "'has ultimate authority to make certain fundamental

decisions regarding the case' . . . the remaining decisions are in the hands of counsel"); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (observing that while the Sixth Amendment secures the right to appellate counsel, an "attorney need not advance every argument, regardless of merit, urged by the appellant"). Rather, counsel is entitled to make reasonable tactical decisions, and courts must take a "deferential" approach when reviewing these questions of strategy. *Johnson v. Turner*, 624 F.3d 786, 792 (7th Cir. 2010) (reviewing courts will not "second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient"). Mr. Morris's decision not to press Mr. Blake's proposed Due Process argument was a reasonable one. The legal foundation for Mr. Blake's proposed Due Process argument would likely have been tenuous. A criminal defendant certainly has the constitutional right to be sentenced based upon accurate information. *See United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010). However, it is less clear that the sentencing guidelines for crack cocaine offenses, despite the disparity between crack and powder cocaine sentences, amount to inaccurate information. While sentencing guidelines are merely advisory, *United States v. Booker*, 543 U.S. 220 (2005), and district courts may depart from them when the particulars of a given case call for it, *Kimbrough v. United States*, 552 U.S. 85 (2007), there is no support for the proposition that consideration of the Guidelines at sentencing is a Due Process violation. As a result, Mr. Morris's decision not to pursue Mr. Blake's proposed Due Process theory did not render his representation deficient. *See United States v. Caldwell,* 917 F.2d 301, 304 (7th Cir. 1990) (an attorney is not ineffective when the likely success of a client's proposed strategy is "slight").

### 2. Prejudice

Additionally, Mr. Blake has not shown that he was prejudiced by Mr. Morris's failure to argue his Due Process theory. It is clear from the record that Mr. Morris did argue that Mr. Blake's sentence should be reduced because of the disparity between sentences for crack and powder cocaine offenses. At Mr. Blake's first resentencing hearing on October 7, 2003 (the first hearing where Mr. Morris represented Mr. Blake), Mr. Morris argued that "there is a tension between guidelines with respect to sentencing people for powder and crack in 3553[,] which says there is a need to avoid unwarranted sentencing disparities among similar defendants with similar conduct" (Doc. 5-3, ¶ 7, 10-CV-628). Mr. Morris argued that there are "massive statistical disparities in what happens to African American defendants charged with crack, and white defendants who are charged with powder," and that "[t]he Sentencing Commission three times has recommended that there be a change in this ratio." *Id.* What's more, before Mr. Blake's second resentencing hearing on August 30, 2006, Mr. Morris filed a sentencing memorandum that directly addressed and attacked the sentencing disparities (Doc. 163, 02-CR-30086-GPM). Later, Mr. Morris successfully argued before the Seventh Circuit that this Court had failed to properly consider the disparity between crack and powder cocaine sentences. *United States v. Blake*, 289 Fed. Appx. 118, 2008 WL 278437 (7th Cir. July 18, 2008). As a result of Mr. Morris's advocacy in that appeal, Mr. Blake was granted another resentencing hearing. And prior to that new resentencing hearing on October 27, 2009, Mr. Morris filed yet another sentencing memorandum in which he fired broadsides against disparities in the Sentencing Guidelines and requested that Mr. Blake's sentence be reduced to account for these disparities (Doc. 183). Mr. Blake received a 42 month reduction in his sentence at that resentencing.

To meet *Strickland's* prejudice prong, Mr. Blake "must show a reasonable probability that his underlying argument would have been accepted at the sentencing hearing." *Welch*, 604 F.3d at 425. Likewise, the possibility of an alternate outcome must be "substantial, not just conceivable." *Morgan*, 662 F.3d at 802. Given this standard, it is difficult to see how Mr. Blake was prejudiced by Mr. Morris's failure to make his proposed Due Process argument. The Due Process argument is tenuous, and Mr. Morris obtained a 42 month sentence reduction for Mr. Blake by pursuing different lines of attack. Mr. Blake has failed to show how the outcome would have been any different (let alone any better) had Mr. Morris made the Due Process argument. As a result, Mr. Blake's first claim that Mr. Morris provided ineffective assistance of counsel is **DENIED**.

**Ineffective Assistance of Counsel Claim Against Gareth Morris For Failing to Object to the Court's Consideration of Acquitted Conduct**

Mr. Blake argues that Mr. Morris was ineffective at sentencing and on appeal for failing to "put the burden on the government" to prove acquitted conduct used to calculate his sentence (Doc. 1-1, ¶ 6, 10-CV-628). Mr. Blake was convicted of distributing 27.8 grams of cocaine base but was acquitted of a second count of distributing 25 grams of cocaine. In Mr. Blake's Presentence Investigation Report, his relevant conduct, for the purpose of calculating his base offense level under the Sentencing Guidelines, was deemed to be both drug sales, even though he was convicted of just one. As a result, Mr. Blake's base offense level was calculated as if he had sold 52.8 grams of cocaine base. Under the 2002 Sentencing Guidelines, offenses that involved at least 50 grams but less than 150 grams of cocaine base had a base offense level of 32. *See* U.S.S.G. § 2D1.1 (2002). Had only Mr. Blake's convicted conduct been considered, he would have had a base offense level of 28. However, because Mr. Blake was not prejudiced by consideration of his acquitted conduct,

the Court denies Mr. Blake's ineffectiveness claim without reaching an inquiry of whether Mr. Morris was deficient. *See Welch*, 604 F.3d at 425.

Under *Apprendi v. New Jersey,* "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 426 *quoting Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Mr. Blake was sentenced under 21 U.S.C. § 841(b)(1)(B) for distributing at least five grams of cocaine base. By statute, because Mr. Blake had a prior felony drug conviction, the statutory maximum penalty was life imprisonment even before his acquitted conduct was taken into consideration. 21 U.S.C. § 841(b)(1)(B) (2002). As a result, his acquitted conduct had no effect on the statutory maximum of his penalty, and Mr. Blake was not prejudiced by Mr. Morris's alleged failure to require the government to prove the acquitted conduct by a reasonable doubt.

Consideration of Mr. Blake's acquitted conduct also had no effect on the calculation of his guideline sentence.[3] Mr. Blake was classified a career criminal under section 4B1.1 of the Sentencing Guidelines.[4] When a defendant qualifies as a career offender, his base offense level is calculated under section 4B1.1(b) if that offense level is higher than the offense level otherwise applicable to the defendant. In Mr. Blake's case, because his conviction carried a statutory maximum sentence of life imprisonment, as a career criminal his offense level was 37 under the

---

[3] Acquitted conduct is a proper consideration at sentencing and may be considered to determine the relevant conduct for a sentence. *See United States v. Waltower*, 643 F.3d 572, 577 (7th Cir. 2011) (holding that the use of acquitted conduct to calculate an advisory guideline sentence "cannot by itself furnish Sixth Amendment ammunition for excluding acquitted conduct at sentencing").

[4] Mr. Blake was subject to career offender status under section 4B1.1. because was over 18 years of age when he committed the instant offense, the instant offense was a controlled substance offense, and he had two prior felony convictions for crimes of violence or controlled substance offenses. *See* USSG § 4B1.1(a).

2002 Sentencing Guidelines. *See* United States Sentencing Commission, *Guidelines Manual*, § 4B1.1(b) (Nov. 2002). As a result, because his offense level under section 4B1.1(b) was higher than the base offense level calculated in his Presentence Investigation Report, he would have had a base offense level of 37 *regardless of whether his acquitted conduct was taken into consideration*. In other words, because of his status as a career offender under section 4B1.1, whether Mr. Morris had pressed the issue of acquitted conduct was irrelevant to the calculation of Mr. Blake's guideline sentence.

Through all of Mr. Blake's sentencing hearings, he remained classified a career criminal. The Court stated at Mr. Blake's most recent resentencing hearing on October 27, 2008 that Mr. Blake was a career criminal under the Sentencing Guidelines but that the Court deviated from the guidelines for a career criminal because of other considerations particular to Mr. Blake (Doc. 5-8, ¶ 17, 10-CV-628). As the Court has repeated on the record, these considerations included Mr. Blake's heroic actions in saving the life of a correctional officer and to account for the sentencing disparity between crack and powder offenses. But these factors did not change Mr. Blake's status as a career offender; rather, they were arguments put forward by Mr. Morris to persuade this Court to depart from the guidelines for a career offender, arguments that were successful.

In sum, the calculation of Mr. Blake's guideline sentence was unaffected by his acquitted conduct. As a result, he suffered no prejudice because of Mr. Morris's alleged failure to put the burden on the government to prove his acquitted conduct. Therefore, Mr. Blake's claim of ineffectiveness against Mr. Morris is **DENIED**.

### B. Due Process Right To Be Sentenced Based on Accurate Information

Apart from complaints of ineffective assistance of counsel, Mr. Blake attacks his sentence for its perceived violation of his right to Due Process. Mr. Blake argues that his sentence violates his right to be sentenced based on accurate information because the disparate ratio between sentences for crack and powder cocaine offenses is based on inaccurate information. This is the same Due Process argument that Mr. Blake believes Mr. Morris should have made on his behalf. Now, however, Mr. Blake raises it as an independent constitutional ground to vacate his sentence.

Mr. Blake's argument is frivolous. As previously stated, a criminal defendant has a constitutional right to be sentenced based on accurate information. *See United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010). That said, a sentencing court may consider a wide range of information when fashioning a sentence, limited only by the requirement that the information contain "sufficient indicia of reliability to support its probable accuracy." *United States v. Pulley*, 601 F.3d 660, 665 (7th Cir. 2010). Mr. Blake has not identified any inaccurate information on which his sentence relies. He points only to the supposed inaccuracies of the Sentencing Guidelines for powder and crack cocaine offenses. While a court is not bound by the Sentencing Guidelines, it may well consider them in fashioning an appropriate sentence. It follows that it is not a violation of Mr. Blake's right to Due Process that this Court merely considered the Sentencing Guidelines in arriving at his sentence. Mr. Blake's request for relief is **DENIED**.

### C. Changed Circumstance

Mr. Blake's fourth challenge to his sentence stems from "Congress's decision to implement an 18:1 ratio" in sentencing law affecting the disparity between powder and crack cocaine sentences (Doc. 1). Mr. Blake contends that the change in sentencing law amounts to changed circumstances,

which permits him to collaterally attack his current sentence. Section 2255 motions are "neither a recapitulation of nor a substitute for a direct appeal," and "[i]ssues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances." *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (internal citations and quotations omitted). Though Mr. Blake, through counsel, did raise the issue of crack to powder cocaine disparity on direct appeal, his argument here seems to be that The Fair Sentencing Act of 2010 constitutes "changed circumstances." The applicability of The Fair Sentencing Act and the retroactivity of the guideline amendments as they relate to Mr. Blake's sentence are the subject of a separate action by Mr. Blake: currently pending in his criminal case, 02-30086-GPM, is a motion to reduce his sentence pursuant to 18 U.S.C. § 3582. Mr. Blake's argument is properly brought in that context. The Court will consider the applicability of The Fair Sentencing Act and retroactive guideline amendments pursuant to 18 U.S.C. § 3582 in Mr. Blake's criminal case. His argument for collateral relief on this basis is denied.

## CONCLUSION

Mr. Blake's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED** on the merits and this action is **DISMISSED** with prejudice. The Clerk is directed to enter judgment accordingly

**IT IS SO ORDERED.**

DATED: April 4, 2012

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge
